CENTRAL AGUIRRE SUGAR CO., Plaintiff and Appellant, *v.*
SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. R-63-245.     Decided November 16, 1964.

*Hartzell, Fernández & Novas* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Manuel Tirado Viera, Assistant Solicitor General,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The taxpayer, Central Aguirre Sugar Co., brought into Puerto Rico, and installed in its mill, a system for conveying bulk sugar from its warehouse to the holds of ships which carried the product out of Puerto Rico. This system consisted of three small conveyors propelled by electric motors and two main conveyors propelled by diesel motors. The appellee, the Secretary of the Treasury of Puerto Rico, according to the provisions of the Excise Act of Puerto Rico (Act No. 2 of January 20, 1956—13 L.P.R.A. § 4010(b) (8)),[1] requested that the taxpayer pay excise taxes on all of the equipment with the exception of the diesel motors. The trial court, in deciding that these articles are "parts and accessories" of the electric motors "within the broad scope of the definition that any article propelled or otherwise aided or reciprocally subordinated to a taxed article in order to operate the article is taxed in the same manner as the main article (electric motors)," sustained the Secretary's contention that "the articles brought in, conveyors and their belts, were installed *as part of the taxpayer's electric system for the shipping of bulk sugar.*"

---

[1] Section 10 of the law, as amended, provides:

"(a)   .     .     .     .     .     .     .     .

"(b) *Tax Table.* The table of taxes on articles and merchandise is as follows:

"   .     .     .     .     .     .     .     .

"(8) Electrical or gas apparatus, 15% of 'taxable price in Puerto Rico'."

Section 22 of the law in question (13 L.P.R.A. § 4022(a)), provides:

"(a) *Articles taxed.* The tax on electrical or gas apparatus, at the rate prescribed in § 4010 of this title, shall apply to any electrical or gas apparatus, including parts and accessories therefor, except as provided in subsection (b) below."

The aforementioned system is described as follows: Two conveyors 248 and 275 feet long respectively, propelled by two fifteen-horsepower electric motors carry the sugar from the warehouse to a third conveyor, 384 feet long, which carries the product to a building where it is weighed. This third conveyor is propelled by a 100-horsepower diesel motor. The fourth conveyor, 1,122 feet long and propelled by a 170-horsepower diesel motor, starts in the aforementioned building and carries the bulk sugar to a tower on taxpayer's dock. There another conveyor, 65 feet long, runs from the tower to the hold of the ship. This conveyor is propelled by a three-horsepower electric motor. The five conveyors complement each other, though they are capable of operating independently. For operating purposes the five motors operate simultaneously. The taxpayer, according to the above law, paid excise taxes on the conveyors propelled by the electric motors, but protested against the $20,218.11 tax on the diesel conveyors since the taxpayer understood that these conveyors were not subject to tax. The Secretary *agreed that the diesel motors were not subject to tax*, but, insisted that the conveyors propelled by such motors are taxable because, according to the provisions in § 4(7) of the above law (13 L.P.R.A. § 4004(7)), they are "parts and accessories" of articles taxed.

In his appeal from the trial court decision the taxpayer contends that two errors were committed: (1) in stating that in *"Francis* v. *Tax Court,* 74 P.R.R. 18 (1952), the court had under its consideration *whether this same system* was exempt" from the payment of excise taxes and the court found that it was not exempt, and (2) the court erred in deciding "that the parts and accessories of the section propelled by diesel motors are parts and accessories within the meaning of § 4(7) of the law . . . since they are . . . articles propelled, aided or reciprocally subordinated to a taxed article (the electric motors) in order to operate."

We agree with the Solicitor General that the doctrine in *Francis, supra,* is not applicable here, since that case dealt with an industrial or commercial operation carried by the system in question in order to determine whether the system was exempt as essential machinery or equipment used in the operation of an industrial plant, that is, machinery used in the manufacturing stage. In that case we decided that the equipment in question was part of the initial step of the commercial stage, and therefore, was not exempt according to the provision in § 16-B of Act No. 195 of May 7, 1949 (now this exemption is included in § 46(b) of the Excise Act of Puerto Rico, 13 L.P.R.A. § 4046(b)). We also agree that the tax levied, giving rise to this complaint, contemplates the constitution or nature of the equipment or machinery used in the process of shipping bulk sugar. The question involved in this controversy arises from the second error pointed out by the taxpayer. Thus, we must decide whether the two conveyors propelled by diesel motors, within the conveying system of sugar consisting of five conveyors which "complement each other, though they are capable of operating independently," are parts and accessories of the three electric motors propelling the other three smaller conveyors within the definition of the term "parts and accessories" given in § 4(7) (13 L.P.R.A. § 4004(7)) which reads in part as follows:

"(7) 'Parts and accessories' are any articles of a solid nature which, according to its 'normal and predominant use' have been made to be attached to, to be built-in to, to enter in the constitution of, or to be used in connection with or subordinate to any apparatus or article taxed by this subtitle. By 'normal and predominant use' shall be understood that use accorded to an article by sixty (60) per cent or more of the consumers or users, as polled by the Secretary. The terms 'parts and accessories' include:

"(a) Any article which even though it may have an independent use, has been made, according to the 'normal and

predominant use,' to enter in the constitution, operation or ornamentation of the articles taxed;

"(b) Any article which even though propelled or otherwise aided by the main apparatus or article taxed, is also reciprocally subordinate to it in order to operate."

It is clear that the equipment in question does not fall within any of the exclusions numbered in said provision.[2]

No evidence was furnished on the use given by 60 percent or more of the consumers and users with respect to the two conveyors involved in this question.

■ The Secretary of the Treasury did not contend that the predominant use among 60 percent of the consumers or users of the two conveyors was in connection with elec-

---

[2] The aforementioned § 4(7) provides that the terms (parts and accessories) excludes:

"(a) Articles which merely brace or support the main article, other than tripods for cameras or projectors, or provide a seat for the operator or player, unless built-in to the main article;

"(b) Articles used exclusively in the cleaning, maintenance, lubrication, adjustment or repair of the main article, without being built-in to that article, but not including tool kits accompanying a vehicle or machine, or bags or cases for cameras;

"(c) Articles which, by a simple connection, are pulled by self-propelled vehicles to a place to render there principally an agricultural, sanitary or similar function;

"(d) Articles which, without being built-in to the main article, are used exclusively to eliminate or reduce noise or vibration in the main article, but not including silencers for internal combustion engines;

"(e) As respects elevators: the rails and frames embedded in the building, the steel cables, and articles used in the repair of the cage and elevator doors;

"(f) Articles such as supports, music stands and the like which are used to hold the object observed by the operator of a machine or instrument, unless built-in to the main article; and

"(g) As respects printing presses and rotary presses: Newspaper, cardboard matrices, cuts, composing sticks, lead types, metal slugs, rules, corners and bases, but not including photoengraving equipment or accessories and carbons therefor, matrices for linotype and similar machines, or any blanket or prop.

"Even though an article for the purpose of packing, transportation, or under other circumstances, appears separated from the main article, the same shall be considered built-in to the said main article, if so determined from the design of the manufacturer."

tric motors but contended that the conveyors "were installed as part of the taxpayer's electric system for the shipping of sugarcane." It is true that in a requirement for a statement of admission of facts an admission was requested that the two conveyors are used by most sugar mills as part of a system for the conveying of sugar through the use of electric power, but the taxpayer did not admit this fact in his answer. So the administrative determination of the Secretary of the Treasury was that the conveyors were installed "as parts of the electric system for the shipping of sugar." Such a determination enjoys a presumption of correctness— every tax determination by the Secretary of the Treasury is presumed correct[3]—which may be rebutted by reasonable and trustworthy evidence supporting the taxpayer's contentions. As we shall demonstrate below the presumption has been largely rebutted. However, for purposes of determining whether or not the two conveyors in question are "parts and accessories" of the three small electric motors, we may assume that the conveyors of the nature of those we have under consideration in this case are "used predominantly" by all sugar mills having a system for conveying bulk sugar through the use of electric power.

Since neither the two diesel motors nor the set of parts which the two conveyors in question constitute are subject to taxation separately, the conveyors are subject only to the excise tax, as argued by the Secretary, if they are "parts and accessories" of the three small electric motors used in

---

[3] On presumption of correction see: *West India Mach.* v. *Secretary of the Treasury*, 89 P.R.R. 113 (1963); *Reyes* v. *Secretary of the Treasury*, 84 P.R.R. 574 (1962); *Ramón* v. *Secretary of the Treasury*, 84 P.R.R. 423 (1962); *Borinquen Home Corporation* v. *Secretary of the Treasury*, 84 P.R.R. 154 (1961); *Central Igualdad, Inc.* v. *Secretary of the Treasury*, 83 P.R.R. 44 (1961); *Vilanova* v. *Secretary of the Treasury*, 83 P.R.R. 72 (1961); *Collazo* v. *Secretary of the Treasury*, 82 P.R.R. 629 (1961); *Carrión* v. *Treasurer of P.R.*, 79 P.R.R. 350 (1956); *Vilanova* v. *Secretary of the Treasury*, 78 P.R.R. 768 (1955); *Cía. Marítima, Etc.* v. *Descartes, Treas.*, 78 P.R.R. 560 (1955).

the above system for conveying bulk sugar. Therefore, we shall determine whether such conveyors were made for:

(1) attachment to the three small electric motors of the conveying system;

(2) physical annexation to the electric motors:

(3) incorporation into the electric motors; or

(4) some subordinated connection to the motors.

Also, we must determine whether the two conveyors:

(5) are part of the constitution, operation or ornamentation of the three electric motors; and

(6) are articles that even when propelled or otherwise aided by the three electric motors, are also reciprocally subordinate to them in order to operate.

■ This case does not deal with the interpretation of a tax exemption which, being a legislative grant, shall be restrictively interpreted, unless the legislative intent within the purposes pursued by the exemption justifies any other way of interpretation. It deals, on the contrary, with the determination of whether certain property is or is not subject to the excise tax. The rules of interpretation in cases of this nature were stated in *Central Coloso* v. *Treasurer of Puerto Rico*, 74 P.R.R. 449 (1953), where we stated that:

(a) A law shall not be interpreted by taking each of its paragraphs, sections or subsections separately, but shall be interpreted as a whole.

■ (b) When the intent of levying a tax is not clear, the doubt shall be resolved against the levying of the tax.

It is obvious that the two conveyors in question were not built to be attached to the three electric motors of the taxpayer's system for conveying sugar. Since the conveyors are attached to two diesel motors, in the absence of evidence to the contrary, it is presumed that they were made to be attached to the diesel motors.

The conveyors are not physically annexed to the three electric motors. On the contrary, they are annexed to the two diesel motors.

The two conveyors in question do not constitute part of the three electric motors. In other words, they are not parts, iron fittings, mechanisms, or components of the motors.

We will have to determine the extent of the term "subordinate" as used in the definition of "parts and accessories" in paragraphs 4 and 6 above. As the term in question is used in a definition of "parts and accessories" it necessarily applies only to the operation per se of the article taxed, in this case the electric motors. It may be said that the two conveyors in question, as well as the three electric motors, because they are part of a system for the conveying of bulk sugar, are subordinate parts of the system, but this does not mean that they are subordinate to each other in the sense of constituting "parts and accessories" to each other. In a case such as this, this conclusion is reaffirmed if we take into consideration the following data appearing in the record:

(1) the cost of the parts of the conveyor system which is propelled by diesel motors is $222,774.23. The parts propelled by electric motors cost $53,936.49. So taxes levied on the former parts amounted to $20,218.11, while taxes levied on the latter should not exceed $5,000.

(2) The conveyors propelled by the three electric motors have a total length of 588 feet, while the total length of those propelled by diesel motors is 1,506 feet.

(3) Two of the electric motors are 15-horsepower, while one of the diesel motors is 100-horsepower and the other is 170-horsepower.

■ In the light of these facts it is not possible to conclude, even if we interpret the statute liberally in favor of levying the tax and not restrictively as we should do, that

the two conveyors in question are "otherwise aided" by the electric motors since, on the contrary, they are propelled and therefore thoroughly "aided" by the diesel motors. We cannot conclude that "they are reciprocally subordinated to them (electric motors) in order to operate." We have indicated above that the two conveyors in question cannot be considered "subordinate" to the three electric motors, nor do they operate from electric motors. The conveyors do not enter, contribute nor aid in the operation of the electric motors, which operation is a result of the application of electric power to a whole series of parts and components constituting the motors. This is done independently and separately of the conveyors which, at the same time, are propelled by, and in effect "annexed" and "subordinated" to, two diesel motors.

For the reasons stated above we conclude that the two conveyors, the objects of this complaint, do not constitute "parts and accessories" of the three electric motors and, therefore, are not taxable under the Excise Act of Puerto Rico. *Cf. South P. R. Sugar Co.* v. *Secretary of the Treasury*, 90 P.R.R. 229 (1964). By virtue of which, it is ordered that the judgment rendered by the trial court shall be reversed and a new judgment entered sustaining this complaint, and reimbursing the taxpayer in the amount of the tax.